COURT OF APPEALS
DECISION
DATED AND FILED

September 17, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.   **2023AP1549**

**STATE OF WISCONSIN**

Cir. Ct. No. 2022CV296

**IN COURT OF APPEALS**
**DISTRICT II**

BANK OF AMERICA NA,

    PLAINTIFF,

  V.

THE ESTATE OF RICHARD P. NELSON,

    DEFENDANT,

UNITED STATES OF AMERICA,

    DEFENDANT-RESPONDENT,

STATE OF WISCONSIN DEPARTMENT OF REVENUE,

    DEFENDANT-APPELLANT.

APPEAL from orders of the circuit court for Waukesha County: MICHAEL P. MAXWELL, Judge. *Affirmed*.

Before Neubauer, P.J., Gundrum, and Lazar, JJ.

¶1     NEUBAUER, P.J.   The Wisconsin Department of Revenue (DOR) appeals from an order directing the Waukesha County clerk of court to disburse $54,421.96 that the clerk was holding as surplus proceeds from the foreclosure sale of real property formerly owned by Richard Nelson to the United States of America.   The DOR and the United States each had liens on the property for unpaid taxes, but the circuit court determined that the United States had the superior claim to the surplus under the federal priority statute, 31 U.S.C. § 3713.   As relevant here, the statute gives the federal government's claim priority if "the estate of a deceased debtor, in the custody of the executor or administrator, is not enough to pay all debts of the debtor."  Sec. 3713(a)(1)(B).   The court concluded that the statute applies to the surplus because the clerk of court qualifies as an "administrator."   The DOR disagrees with the court's reading of the statute, but for the reasons explained below, we conclude that the court correctly determined that the statute applies and that the United States is entitled to the surplus.   We therefore affirm.

## BACKGROUND

¶2     The relevant facts are brief and undisputed.   Richard Nelson died owing substantial sums to the United States ($175,431.51) and the DOR ($115,975.33) for unpaid taxes.  Bank of America, NA, which held a mortgage on real property Nelson owned at the time of his death, commenced this action seeking to foreclose on its mortgage and sell the property to pay off its loan.  In addition to Nelson's estate, Bank of America named the United States and the DOR as defendants because both had liens against the property to secure unpaid tax debts.  The circuit court entered a judgment of foreclosure allowing Bank of

America to sell the property. The property was later sold at a sheriff's sale. The purchaser paid the sale price to the clerk of court. After the bank's claim and certain fees were paid, a surplus of $54,421.96 remained. The order confirming the sale instructed the clerk to hold the surplus "pending further order of the court."

¶3      The DOR filed an application asking the circuit court to direct the clerk to pay the surplus to it pursuant to its tax lien. The United States also filed a motion to claim the surplus, arguing that its claim was "entitled to priority … pursuant to 31 U.S.C. § 3713." The DOR opposed the United States' claim, arguing that § 3713 "does not apply in this foreclosure action." After the parties submitted briefs on the applicability of § 3713, the court issued a written decision concluding that the statute applied to the surplus, the clerk of court was an "administrator" under § 3713(a)(1)(B), and thus the United States' claim to the surplus had priority. The DOR moved for reconsideration, arguing that the court's conclusion was a manifest error of law. The court disagreed and denied the motion.

## DISCUSSION

¶4      The parties take different positions regarding the appropriate standard of review. The DOR argues that we are to review the circuit court's interpretation and application of the priority statute de novo. The United States, citing a circuit court's "equitable discretion" in foreclosure proceedings, contends that the court's decision should only be reviewed for an erroneous exercise of discretion. However, the parties agree that resolution of this appeal turns on the proper interpretation and application of 31 U.S.C. § 3713. We thus agree with the DOR that de novo review is appropriate. *See Alberte v. Anew Health Care Servs.,*

3

*Inc.*, 2000 WI 7, ¶7, 232 Wis. 2d 587, 605 N.W.2d 515 ("Interpretation of a federal statute is a question of law that is subject to de novo review by this court.").

¶5     The priority statute "is almost as old as the Constitution, and its roots reach back even further into the English common law." *United States v. Moore*, 423 U.S. 77, 80 (1975). The first priority statute was enacted in 1789, and subsequent enactments in the 1790s broadened its scope and "gave the priority teeth by making the administrator of any insolvent or decedent's estate personally liable for any amount not paid the United States because he gave another creditor preference." *Id.* at 81. These enactments were later codified as 31 U.S.C. §§ 191 and 192 (1976). Section 191 stated as follows:

> Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed.

*See Moore*, 423 U.S. at 79. Section 192, which codified the personal liability aspect of the priority, stated as follows:

> Every executor, administrator, or assignee, or other person, who pays, in whole or in part, any debt due by the person or estate for whom or for which he acts before he satisfies and pays the debts due to the United States from such person or estate, shall become answerable in his own person and estate to the extent of such payments for the debts so due to the United States, or for so much thereof as may remain due and unpaid.

*See **United States v. King***, 322 F.2d 317, 320 (3d Cir. 1963). Congress later revised and re-enacted Sections 191 and 192 as 31 U.S.C. § 3713(a) and (b), respectively, but "no substantive changes" to the priority statute were intended by that revision. *See **United States v. Coppola***, 85 F.3d 1015, 1019 n.3 (2d Cir. 1996); ***United States v. Cole***, 733 F.2d 651, 654 n.2 (9th Cir. 1984).

¶6    In its current form, the priority statute states as follows:

(a)(1) A claim of the United States Government shall be paid first when--

(A) a person indebted to the Government is insolvent and--

(i) the debtor without enough property to pay all debts makes a voluntary assignment of property;

(ii) property of the debtor, if absent, is attached; or

(iii) an act of bankruptcy is committed; or

(B) the estate of a deceased debtor, in the custody of the executor or administrator, is not enough to pay all debts of the debtor.

(2) This subsection does not apply to a case under title 11.

(b) A representative of a person or an estate (except a trustee acting under title 11) paying any part of a debt of the person or estate before paying a claim of the Government is liable to the extent of the payment for unpaid claims of the Government.

31 U.S.C. § 3713(a)-(b).

¶7    The parties focus their arguments on subsection (a)(1)(B) because Nelson is deceased. We begin our analysis of that subsection with two points that appear to be undisputed. First, the DOR and the United States agree that the surplus is not an asset that legally belongs to Nelson's estate and instead is, at

present, in the "custody" of the clerk of court. In addition, neither party disagrees with the circuit court's determination that the clerk is not an "executor" under the statute.

¶8      The parties do disagree, however, about whether the clerk is an "administrator." The DOR contends that although we are concerned with a federal statute, we must analyze it using the interpretive principles that guide our analysis of Wisconsin statutes. *See State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶¶44-52, 271 Wis. 2d 633, 681 N.W.2d 110; *Voces De La Frontera, Inc. v. Clarke*, 2017 WI 16, ¶13, 373 Wis. 2d 348, 891 N.W.2d 803 ("We apply general principles of statutory interpretation when construing federal regulations."). Under the *Kalal* framework, it argues, we are to focus on the language of the statute, give its terms their ordinary meaning unless they are technical or specially-defined, and construe the statute as a whole, not in isolated parts. *See Kalal*, 271 Wis. 2d 633, ¶¶45-46.

¶9      Applying that framework to the statutory language at issue here, the DOR contends that the term "executor" in 31 U.S.C. § 3713(a)(1)(B) refers to "someone appointed by a will to settle the affairs of a decedent's estate," and that the term "administrator" must have a similar meaning because those terms are linked in the statute in a context that suggests they have similar meanings. In the DOR's view, an "administrator" must also be "someone who is appointed to settle an estate." It contends that this meaning of "administrator" existed around the time of the founding when the first priority statute was enacted, as evidenced in contemporary dictionaries and statutes. It also finds support for its interpretation in subsection (b) of the statute, which subjects "[a] representative of a person or an estate" to liability if he or she "pay[s] any part of a debt of the person or estate before paying a claim of the [United States]." The DOR contends that a clerk of

court does not become a representative of an estate by holding a surplus, and in any event could not be held liable under § 3713(b) because our supreme court held, in *Ford v. Kenosha County*, 160 Wis. 2d 485, 499, 466 N.W.2d 646 (1991), that "when a non-judicial officer performs a ministerial function, but *at the direction of a judge* who is acting in a judicial capacity, that officer is cloaked with absolute immunity from civil liability."

¶10     The DOR also cites several nineteenth century decisions of the United States Supreme Court and Wisconsin courts that refer to executors and administrators as persons charged with settling estates.  *See, e.g.*, *Ogden v. Blackledge*, 6 U.S. 272, 275 (1804) (stating that executors and administrators differ only in "that one is created by the act of law, and the other by the act of the party"); *Bank of Hamilton v. Dudley's Lessee*, 27 U.S. 492, 504 (1829) (reference to "all probate and testamentary matters" in state constitution "meant all the duties of executors and administrators, and all matters arising out of the settlement of the estates of decedents"); *Johnson v. Wilson*, 1 Pin. 65, 67 (Wis. 1839) (explaining that an administrator appointed in another state could not "come into our courts and, with their aid, collect the assets of the estate, carry them into another jurisdiction, and thereby require the creditors of the deceased in this Territory to receive payment or distribution of the same according to the laws of a foreign and distant government"); *Robbins v. Gillett*, 2 Pin. 439, 440 (Wis. 1850) (discussing state statute "provid[ing] that the executor or administrator, shall have a right to the possession of all the real, as well as the personal estate of the deceased"). These authorities, the DOR posits, show that Congress intended the word "administrator" in the priority statute to mean "someone appointed by a judge to settle an intestate decedent's estate."

¶11     The DOR concludes by explaining that a circuit court clerk is not an "administrator" under 31 U.S.C. § 3713 because clerks hold constitutionally created offices and perform a variety of duties unconnected to settling the estates of intestate decedents.  It notes that in foreclosure cases like the present case, a clerk's role is limited to accepting notices from persons who claim an entitlement to some or all of a surplus and paying the surplus as directed by the circuit court. *See* WIS. STAT. § 846.162 (2023-24).[1]  The DOR contrasts this limited role with the broad powers accorded to personal representatives appointed under Wisconsin probate law to settle the estates of intestate decedents.  *See* WIS. STAT. § 851.23. Personal representatives are empowered with authority to "pay and discharge out of the estate all expenses of administration, taxes, charges, claims allowed by the court, or such payment on claims as directed by the court; render accurate accounts; make distribution and do any other things directed by the court or required by law." WIS. STAT. § 857.03(1).  The DOR notes that clerks of court lack such powers and instead fill an "entirely separate" role "circumscribed by different laws."

¶12     The United States takes a fundamentally different approach to interpreting the priority statute.  It contends that we must follow federal law in construing the statute and directs us to several United States Supreme Court decisions in which the Court recognized that its terms are to be liberally construed in view of its underlying aim of securing sufficient revenue for public needs.  *See Moore*, 423 U.S. at 81-82 ("the priority proceeds from 'motives of public policy, in order to secure an adequate revenue to sustain the public bur[d]ens and

---

[1]  All references to the Wisconsin Statutes are to the 2023-24 version.

discharge the public debts …. (A)s that policy has mainly a reference to the public good, there is no reason for giving to (the statute) a strict and narrow interpretation.'" (quoting *United States v. State Bank of N. Carolina*, 31 U.S. 29, 35 (1832))); *Bramwell v. U.S. Fid. & Guar. Co.*, 269 U.S. 483, 487 (1926) ("As this statute has reference to the public good, it ought to be liberally construed.").

¶13    With regard to the specific issue before us, the United States contends that the priority statute's "application is not to be narrowly restricted to the cases within the literal and technical meaning of the words used." *See Bramwell*, 269 U.S. at 492. Rather, it should be applied broadly to "all debts due from deceased debtors whenever their estates are insufficient to pay all creditors." *See id.* at 487. The United States says we should construe the statute "functionally" and apply it to any person who exercises control over the assets of a debtor, regardless of that person's title.

¶14    In support, the United States cites *King v. United States*, 379 U.S. 329 (1964), in which the Supreme Court held that King, who had been appointed by a bankruptcy court as an agent for distribution of an insolvent corporation's assets, could be held liable under 31 U.S.C. §§ 191-192 (1958) for paying the claims of other creditors before the United States' claim. King argued that he could not be held liable because "distributing agents as a class … are agents of the court rather than personal representatives of the debtor." *King*, 379 U.S. at 336. The Court disagreed:

> The purpose of s 192, as recognized in *Bramwell*, is to make those into whose hands control and possession of the debtor's assets are placed, responsible for seeing that the Government's priority is paid. Whether or not King falls within the category of fiduciaries on whom such responsibility should be placed depends, not on the title of his position or the mode of his appointment, but, in practical terms, upon the degree of control he is in a

> position to assert over the allocation among creditors of the debtor's assets in his possession.

*King*, 379 U.S. at 337.  The Court further described *Bramwell* as establishing

> that others besides personal representatives of the debtor may be included in s 192, for in that case this Court indicated that s 192 would apply to a state official charged with the function of liquidating a bank's assets, although the official was clearly not acting as the personal representative of the bank.

*King*, 379 U.S. at 337.  Thus, the fact that King worked "primarily for the court rather than for the debtor" did not place him beyond the statute's reach.  *Id.* at 338.

¶15   In its reply brief, the DOR contends that *Bramwell*, *Moore*, and *King* are not controlling here because none of those cases specifically addressed the meaning of "administrator" in the priority statute, and each arose out of facts that are materially different from those in the present case.  The DOR also cites several other United States Supreme Court decisions which, in its view, show that the priority statute should be "interpreted … according to its terms, even when doing so limit[s] the rule's reach."  *See, e.g.*, *Prince v. Bartlett*, 12 U.S. 431, 434 (1814) (explaining that "[i]t appears to be the true construction of the [priority statute] to confine it to the cases of insolvency specified by the legislature"); *State Bank of N. Carolina*, 31 U.S. at 34 ("The priority of the United States has been held to exist in the cases only which come within the statutes, on their strictest construction.");[2] *United States v. Oklahoma*, 261 U.S. 253, 259 (1923)

---

[2] This statement from *United States v. State Bank of North Carolina*, 31 U.S. 29 (1832), is taken from the Court's summary of the argument presented by the bank's counsel, not from the Court's opinion.  The Court disagreed with the bank's argument, concluding that "there is no reason for giving [the priority statutes] a strict and narrow interpretation."  *Id.* at 35.  Instead, the statutes were "to receive a fair and reasonable interpretation, according to the just import of their terms."  *Id.*

(explaining that earlier priority statute "established priority which is limited to the particular state of things specified").

¶16　After careful review of these authorities, we conclude that the United States has the better reading of the priority statute. The interpretation and application of the statute is governed by federal law. *See **Stipetich v. Grosshans***, 2000 WI App 100, ¶11, 235 Wis. 2d 69, 612 N.W.2d 346. "[W]e are bound by the United States Supreme Court's interpretation" of the statute, *see **Doubek v. Kaul***, 2022 WI 31, ¶3, 401 Wis. 2d 575, 973 N.W.2d 756, and because its text "is virtually unchanged since its enactment" in the late 1700s, ***United States v. Estate of Romani***, 523 U.S. 517, 524 (1998), it is appropriate to look to cases applying prior versions for guidance, ***Coppola***, 85 F.3d at 1019 n.3.

¶17　Although the DOR is correct that the United States Supreme Court has not addressed the precise issue presented here, its decisions instruct that we must construe the statute broadly and not in a manner that limits its reach to "the literal and technical meaning" of its terms. *See **Bramwell***, 269 U.S. at 492. And our analysis must focus not on the clerk's "title … or … mode of … appointment" but rather on the "degree of control" the clerk may assert over the disposition of the surplus. *See **King***, 379 U.S. at 337.

¶18　Under this interpretive framework, we agree with the United States that the priority statute applies to the foreclosure surplus. Though the clerk of court may not, as the current custodian of the surplus, exercise all of the powers granted to an administrator or personal representative appointed by a court to settle a decedent's estate, the clerk nonetheless exercises significant control over the disposition of the surplus. The clerk has exclusive custody of the surplus and no claimant may receive any portion of it unless and until the clerk disburses it as

11

directed by the circuit court. We agree with the circuit court that, in these circumstances, the clerk functions as the equivalent of an "administrator" for the purpose of 31 U.S.C. § 3713(a)(1)(B). The control exercised by the clerk over the surplus suffices to bring the clerk within the scope of the statute.

¶19 The DOR's focus on determining the meaning of "administrator" from interpretive canons, syntax, and uses of that term in ancient sources is misplaced. In effect, that effort favors a "technical meaning" of the statute over the broader reading that *Bramwell*, *Moore*, and *King* instruct us to give it. Like the distribution agent in *King*, the fact that the clerk functions as an arm of the circuit court with respect to the foreclosure surplus, and not as a representative of Nelson's estate, is not enough to render the priority statute inapplicable.

¶20 The DOR makes a second argument as to why the priority statute does not apply to the surplus, but it fares no better than its first. The DOR notes that 31 U.S.C. § 3713(a)(1)(B) applies only if a deceased debtor's estate "is not enough to pay all debts of the debtor." The DOR characterizes this language as imposing "the functional equivalent to the insolvency requirement for living debtors in subsection (a)(1)(A)" and argues that the United States did not prove that all of the assets in Nelson's estate—not just the surplus—were insufficient to pay the estate's debts. In response, the United States contends that it did not have the burden of proving that Nelson's estate was insolvent. Instead, it argues, the burden falls on the DOR, as the party "who claim[s] exemption from the operation of the statute," to show that it does not apply. *See Bramwell*, 269 U.S. at 487; *see also United States v. Cole*, 733 F.2d 651, 654 (9th Cir. 1984) ("The burden lies with those who argue that the government's priority does not apply to show that they are not within the provisions of section 3713."). The DOR disagrees, arguing that the United States has the burden to establish insolvency, and only when the

12

priority statute appears to apply does the burden shift to the opposing party to prove an exception. *See **United States v. Hooe***, 7 U.S. 73, 90 (1805) (explaining "that the insolvency, which is the foundation of the claim, must certainly be proved by the United States").

¶21 Ultimately, we need not resolve this issue because the Wisconsin Consolidated Court Automation Programs (CCAP) record of the probate proceeding involving Nelson's estate indicates that the estate was insolvent. *See* Waukesha County Circuit Court Case No. 2020PR579. We may take judicial notice of the CCAP records in that action. *See **OLR v. Hudec***, 2019 WI 39, ¶32, 386 Wis. 2d 371, 925 N.W.2d 540 (per curiam); ***Kirk v. Credit Acceptance Corp.***, 2013 WI App 32, ¶5 n.1, 346 Wis. 2d 635, 829 N.W.2d 522. Here, the CCAP record indicates that an attorney for Nelson, who also served as the personal representative of his estate, filed a petition to close the estate pursuant to a summary settlement and, at a hearing on the petition held on July 18, 2024, represented to the circuit court that Nelson's estate was insolvent. The record further indicates that the court granted the petition and that the proceeding was closed shortly thereafter. The DOR has not alerted us to anything which calls the accuracy of this information into question. We deem it sufficient to establish that Nelson's estate did not contain assets sufficient to pay all of Nelson's debts.

¶22 Finally, the DOR argues that the circuit court erred in denying its motion for reconsideration. In that motion, the DOR challenged the court's conclusion that the United States was entitled to priority because the clerk of court was an "administrator" for the purpose of 31 U.S.C. § 3713(a)(1)(B). Rulings on motions to reconsider are reviewed for an erroneous exercise of discretion. ***Bauer v. Wisconsin Energy Corp.***, 2022 WI 11, ¶11, 400 Wis. 2d 592, 970 N.W.2d 243. In light of our determination that the priority statute applies to this case and

entitles the United States to the surplus, we conclude that the court did not erroneously exercise its discretion in denying the DOR's motion for reconsideration.

## CONCLUSION

¶23    The priority statute entitles a claim of the United States to priority over other claims if "the estate of a deceased debtor, in the custody of the executor or administrator, is not enough to pay all debts of the debtor." 31 U.S.C. § 3713(a)(1)(B). The statute applies here: the Waukesha clerk of court functions as an "administrator" with respect to the foreclosure surplus because the clerk exercises control over the surplus and its disposition, and the estate of Richard Nelson is unable to pay all of Nelson's debts. Thus, the circuit court did not err in ordering the clerk to pay the surplus to the United States, or in denying the DOR's motion to reconsider that order.

*By the Court.*—Orders affirmed.

Recommended for publication in the official reports.